## A. K. SELLERS *et al.* v. REBECCA CROSSAN.

1. WARRANTY DEED — *Possession of Grantor after Conveyance.* Where an owner executes and places upon record a warranty deed purporting to convey the complete title of land occupied by himself and family, his subsequent possession will generally be considered as in subserviency to the record title.

2. HOMESTEAD INTEREST — *Estoppel.* The parties in possession, husband and wife, having joined in the execution of the conveyance which apparently transferred the complete title, and having subsequently disavowed any interest in the land, are estopped from claiming a homestead interest in the premises so conveyed as against the mortgagee of their grantee who had no notice that the conveyance made by them was other than what it purported to be.

*Error from Miami District Court.*

ACTION by *A. K. Sellers* and another against *Rebecca Crossan,* to set aside a judgment. There was judgment for defendant, and plaintiffs bring error. The opinion states the material facts.

*W. H. Browne,* for plaintiffs in error; *Sperry Baker,* and *N. W. Wells,* of counsel.

*Crossan & Lane,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action brought by A. K. Sellers and Nettie Sellers, his wife, to vacate and set aside a judgment obtained by Rebecca Crossan against D. O. Sellers and Clara N. Sellers, foreclosing a mortgage against real estate in Paola. The grounds for vacation of the judgment were that D. O. Sellers and Clara N. Sellers, who executed the mortgage which was foreclosed, were not the actual owners of the property mortgaged, but the plaintiffs were the owners, and had occupied it since a long time before the mortgage was made as their homestead, and were so occupying it at the time the judgment was rendered. It was alleged that Rebecca Crossan, the judgment creditor, was acquainted

with the homestead character of the premises, and with the ownership of plaintiffs. It appears that the property claimed by plaintiffs was conveyed by them to Clara N. Sellers in January, 1880. The instrument was a warranty deed, conveying the absolute title, with the usual covenants, and the consideration named was $190. In July, 1887, D. O. Sellers and Clara N. Sellers borrowed from Rebecca Crossan the sum of $275, and to secure its payment executed a mortgage on the premises in question, signed only by themselves, in which it was covenanted that they were the lawful owners of the premises, seized of a good and indefeasible estate of inheritance therein. Default being made in the payment of the secured indebtedness, judgment was recovered for the amount due and for a foreclosure of the mortgage. There was testimony to show that, at the time the mortgage was given and the judgment rendered, the property was occupied by the family of A. K. Sellers, which consisted of himself, his wife, and daughter. It was also shown that, prior to 1880, the title to the property stood in the name of Nettie Sellers; and plaintiffs claim, and offered testimony to show, that the conveyance by them to Clara N. Sellers, although a deed in form, was actually a mortgage, made to secure the payment of $190 which had been borrowed by them from Clara N. Sellers and her husband, D. O. Sellers; and further, that there was an agreement that, upon the payment of the debt, the property should be reconveyed. The plaintiffs endeavored to show that the agent of Crossan was informed that they were the equitable and actual owners of the premises when the mortgage was executed and foreclosed; but this was denied, and, like all other facts upon which there was conflicting testimony, it has been conclusively determined in favor of the defendant.

The plaintiffs insist that the deed from them to Clara N. Sellers, having been made to secure a debt, is only a mortgage which did not transfer title; that the premises were their homestead, and that, as the mortgage to Crossan was not signed by them, it was absolutely void. It is true, as contended, that a mortgage lien cannot be created upon a home-

stead without the joint consent of the husband and wife, but, like every other interest, it may be surrendered, transferred, or lost. The action of the parties holding such an interest may be such as to operate as an abandonment or to estop them from claiming such interest. Although they did not sign the mortgage, they had previously executed a warranty deed which upon its face transferred every vestige of title from them. Whatever the fact may have been with reference to the agreement of the grantees to reconvey upon the repayment of the stated consideration, it is conceded that the legal title remained in Clara N. Sellers until the Crossan mortgage was made, and until after the debt had matured and the mortgage had been foreclosed, in 1888. There is testimony that during all this time Clara N. and D. O. Sellers were claiming the title to the property, and A. K. and Nettie Sellers were disclaiming that they had any interest in the premises. A few days previous to the execution of the Crossan mortgage, the agent of Crossan, finding that A. K. Sellers and wife had previously signed a mortgage on the premises, obtained a statement from Nettie Sellers, made under oath, to the effect that she and her husband signed the mortgage through a mistake, that the title to the property was in Clara N. Sellers, and that she and her husband, A. K. Sellers, had no interest in the property whatever. Again, when the Crossan mortgage matured and default was made, an action of foreclosure was begun, when D. O. Sellers applied to Crossan for an extension of time within which to pay the debt. The agent of Crossan, having heard that A. K. Sellers and Nettie Sellers claimed some interest in the property, and desiring to have that question set at rest before granting any extension, inquired with reference to that claim, and was informed that a written disclaimer from A. K. Sellers and Nettie Sellers would be obtained. Accordingly the following written disclaimer was executed and handed to Crossan :

"Know all men by these presents, that we, the undersigned, claim no right, title, or interest, either legal or equitable, in or to the south half of lots 9 and 10, and the south half of

the east half of lot 8, all in block 91, as the same is desig-
nated on the recorded plat of the city of Paola, Kas.

"Witness our hands, this 21st day of January, 1888.
                                    NETTIE SELLERS,
                                    A. K. SELLERS."

Upon the strength of this disclaimer, the debt secured by the
Crossan mortgage was extended for several months.    More
than this, it appears that A. K. Sellers and wife received
the greater part of the money borrowed from Crossan, and
knowingly permitted other mortgages to be made and placed
on record by Clara N. and D. O. Sellers.    After this conduct,
the plaintiffs invoke the equitable jurisdiction of the court to
accomplish what would be an obvious injustice.    Their action
in putting upon record a deed by which they conveyed the
absolute title to the grantee, and their subsequent disavowal
of title or interest estops them from setting up any secret ar-
rangement or title of which Crossan had no knowledge.
Having executed a conveyance and acted so as to induce the
belief that they had surrendered the homestead right, they
will not be permitted to impeach their deed or deny that
they granted the premises which their deed purported to
convey.    It is true that a deed absolute in form but in-
tended as a mortgage will be held to be a mortgage as be-
tween the grantor and grantee, and as to all others who had
actual knowledge of the real character of the instrument.
The finding of the court puts the question of notice at rest,
and hence we must assume that Crossan had no knowl-
edge that the deed was intended as a mortgage, or that
it was anything else than a complete transfer of the whole
title.    It is insisted that the occupation of the premises
by the plaintiffs and their family required everyone dealing
in the property to take notice of the title which they actually
held and of the homestead interest to which their occupancy
entitled them.    It is true the general rule is, that the posses-
sion of land is notice of the title under which the occupant
claims, but this rule has no application where the party in
possession has put upon record a title inconsistent with his

possession.   In such cases, the possession is to be

1. Warranty deed—possession of grantor after conveyance.
considered as in subserviency to the record title. (*McNeal v. Jordan,* 28 Kas. 7.)   In the absence of actual notice, Crossan had a right to rely upon the declaration made in plaintiffs' deed, that their conveyance was absolute and without reservation.   If the deed was intended as a mortgage, and anyone is to suffer for the mis-

2. Homestead interest—estoppel.
take, it should be the one whose conduct caused the loss.   Both of the plaintiffs having joined in the alienation of the land, they are, under the circumstances of this case, estopped from impeaching or contradicting it, or setting up any secret claim or interest therein as against the defendant.

We think the court below reached a just and correct conclusion, and therefore its judgment will be affirmed.

All the Justices concurring.